UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:

JAMES JEFFREY BRADSTREET,

Case Number: 6:09-bk-17518- KSJ

Debtor.

_____/

## MOTION BY LORI BRADSTREET FOR AN ORDER DIRECTING TRUSTEE TO ABANDON REAL PROPERTY

**PURSUANT TO LOCAL RULE 2002-4, THE COURT WILL CONSIDER THIS MOTION WITHOUT FURTHER NOTICE OR HEARING UNLESS A PARTY IN INTEREST FILES AN OBJECTION WITHIN 21 DAYS FROM THE DATE OF SERVICE OF THIS MOTION. IF YOU OBJECT TO THE RELIEF REQUESTED IN THIS PLEADING, YOU MUST FILE YOUR OBJECTION WITH THE CLERK OF THE COURT AT 135 WEST CENTRAL BOULEVARD, SUITE 950, ORLANDO, FLORIDA 32801 AND SERVE A COPY ON THE MOVANT'S ATTORNEY, LAWRENCE B. KENKEL, VOLK LAW OFFICES, P.A., 700 S. BABCOCK STREET, SUITE 402, MELBOURNE, FLORIDA 32901.**

**IF YOU FILE AND SERVE AN OBJECTION WITHIN THE TIME PERMITTED, THE COURT WILL SCHEDULE A HEARING AND YOU WILL BE NOTIFIED; IF YOU DO NOT FILE AN OBJECTION WITHIN THE TIME PERMITTED, THE COURT WILL CONSIDER THAT YOU DO NOT OPPOSE THE GRANTING OF THE RELIEF REQUESTED IN THE PLEADING, WILL PROCEED TO CONSIDER THE PLEADING WITHOUT FURTHER NOTICE OR HEARING, AND MAY GRANT THE RELIEF REQUESTED.**

COMES NOW, LORI BRADSTREET, who respectfully moves this Court for an order directing the trustee to abandon certain real property based on the following representations:

1.    Debtor filed a Chapter 7 Petition on or about November 16, 2009.

2.    This Court has jurisdiction over this proceeding pursuant to 11 U.S.C. §554 and 28 U.S.C. §1334.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §§1408 and 1409.

4.      This pleading constitutes a core proceeding pursuant to 28 U.S.C. §157.

5.      Robert E. Thomas is the duly appointed and acting Chapter 7 Trustee in this case.

6.      Movant is the former spouse of Debtor by way of a Final Judgment of Dissolution [Final Judgment] dissolving the parties' marital union entered in the Circuit Court of the Eighteenth Judicial Circuit, In and for Brevard County, Florida, Case No: 05-2007-DR-010905-XXXX-XX on or about May 18, 2009, a copy of which is attached hereto as **Exhibit A**.

7.      The Final Judgment contained certain voluntary agreements between the Movant and Debtor establishing the rights and duties of the respective parties and establishing mutual covenants and conditions for the distribution of certain real and personal property interests as part of the Final Judgment. This attachment, which is designated as "Memorandum of Agreement" [Memorandum] is attached separately in this instant motion as **Exhibit B**. The Circuit Court retained continuing jurisdiction over the parties relative to the enforcement of these provisions.

8.      Subsequent to the entry of the Final Judgment, certain disputes arose between the parties as to their respective obligations in the Memorandum. As a result, Movant filed a Motion for Contempt for Debtor's failure to cooperate in the settlement of liability pertaining to certain promissory notes payable to Landmark Bank ["Bank"] which are secured by the former marital residence of the parties. A copy of Movant's Motion for Contempt is attached hereto as **Exhibit C**.

9.    A hearing on the Movant's Motion for Contempt before the Circuit Court was

concluded on Friday, November 13, 2009.  The Circuit Court directed Movant to

prepare and submit an order in the form which is attached hereto and designated

herein as **Exhibit D**.  Debtor filed his bankruptcy petition prior to the entry of the

order on November 16, 2009.

10.   The common street address of the subject property is 3212 Bellwind Circle,

Rockledge, FL 32955.  The legal description of the subject property is:

            LOT 1, BLOCK C, SUMMER LAKES - PHASE 1,
            ACCORDING TO THE PLAT THEREOF, AS
            RECORDED IN PLAT BOOK 48, PAGES 98
            THROUGH 100, INCLUSIVE, PUBLIC
            RECORDS OF BREVARD COUNTY, FLORIDA.

11.   On or about December 10, 2009, Landmark Bank filed a motion for relief from

automatic stay [Document No. 16] ["Motion"].  The Motion sought relief on the

basis that the subject property had no equity for the benefit of the Bankruptcy

Estate.  Debtor estimated the market value of the subject property on Schedules

A and D at $550,000 subject to mortgage debt in the approximate amount of

$1,337,000.

12.   An Order lifting the automatic stay [Document No. 20] was entered on January

7, 2010.

13.   Movant has filed a separate motion for relief from the automatic stay for the

purpose, among other things, of entering the Court Order described as **Exhibit D**

in the Circuit Court and to compel the Debtor to comply with the Circuit Court

order.  However, in order to comply with a settlement agreement with the Bank,

Movant and Debtor must turnover said property to the Bank.  Trustee needs to

abandon the estate's interest in the subject property in order to achieve that result.

14.    If Movant is prevented from completing the settlement agreement with the Bank, she will suffer real and irreparable injury, loss and damage.

**WHEREFORE,** Movant prays as follows:

1.    For an order directing the Trustee to abandon the Bankruptcy Estate's interest in the subject property described herein;

2.    For such other and further relief as the Court deems proper.

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent either electronically or by First Class U.S. Mail, postage prepaid, to the United States Trustee, 135 W. Central Blvd., Suite 620, Orlando, FL 32801; the Trustee, Robert E. Thomas, P.O. Box 5075, Winter Park, FL 32793-5075; Debtor, James J. Bradstreet, 643 Hurst Road NE, Palm Bay, FL 32907; Debtor's Attorney, David R. McFarlin, Esq., Wolff, Hill, McFarlin & Herron, P.A., 1851 West Colonial Drive, Orlando, FL 32804; Movant, Lori Bradstreet, 3212 Bellwind Circle, Rockledge, FL 32955, and to all Creditors listed on the attached Matrix, on this 29th day of January, 2010.

**VOLK LAW OFFICES, P.A.**

DAVID J. VOLK        #0712949
LAWRENCE B. KENKEL  #0610402
700 S. Babcock Street, Suite 402
Melbourne, Florida 32901
Telephone:  (321) 726-8338
Facsimile:  (321) 726-8377
volklaw@bellsouth.net

Label Matrix for local noticing
113A-6
Case 6:09-bk-17518-KSJ
Middle District of Florida
Orlando
Fri Jan 29 09:07:32 EST 2010

Landmark Bank, N.A.
c/o Maureen A. Vitucci
GrayRobinson, P.A.
301 E. Pine Street
Suite 1400
Orlando, FL 32801-2798

United States Bankruptcy Court
135 West Central Boulevard Suite 950
Orlando, FL 32801-2443

7 Mile Beach Resort & Club
PO Box 30742
Grand Cayman, KY1-1203
Cayman Islands

AAA Financial Services
PO Box 15019
Wilmington, DE 19886-5019

American Express
Po Box 297871
Fort Lauderdale, FL 33329-7871

BMW Bank of N Amer
2735 E Parleys Ways
Salt Lake City, UT 84109-1663

BMW Bank of North America
PO Box 30311
Salt Lake City, UT 84130-0311

Bank of America
Business Card
PO Box 15731
Wilmington, DE 19886-5731

Bank of America
PO Box 15019
Wilmington, DE 19886-5019

Bank of America
PO Box 17054
Wilmington, DE 19850-7054

Best Buy
PO Box 15521
Wilmington, DE 19850-5521

Brevard County Tax Collector
Attn:  Rod Northcutt, C F C
Post Office Box 2500
Titusville FL 32781-2500

Brevard County Tax Collector
Attn: Lisa Cullen, CFC
Post Office Box 2500
Titusville, FL 32781-2500

Capital 1 Bank
Attn: C/O TSYS Debt MGT
Po Box 5155
Norcross, GA 30091-5155

Capital One
PO Box 85520
Richmond, VA 23285-5520

Central Viera Community Assn
7380 Murrell Rd Ste 201
Melbourne, FL 32940-8130

Chase
800 Brooksedge Blvd
Westerville, OH 43081-2822

Chase
Cardmember Service
PO Box 15153
Wilmington, DE 19886-5153

Chase Auto Finance
PO Box 260161
Baton Rouge, LA 70826-0161

Chase Auto Finance
PO Box 78050
Phoenix, AZ 85062-8050

Chase Home Finance
PO Box 78420
Phoenix, AZ 85062-8420

Chase NA
Attn: Bankruptcy Dept
PO Box 100018
Kennesaw, GA 30156-9204

Clara Mitchell
c/o Carolyn M Salzmann Esq
Morgan & Morgan
20 N Orange Ave, 16th Fl
Orlando, FL 32801-4624

Clarissa E. Harrell, Esq
8195 N Wickham Rd Ste 200
Melbourne, FL 32940-8285

(p)DISCOVER FINANCIAL SERVICES LLC
PO BOX 3025
NEW ALBANY OH 43054-3025

Dsnb Bloom
Bloomingdale's Bankruptcy
Po Box 8053
Mason, OH 45040-8053

Esprit 1 Apartments
13900 Marquesas Way
Marina Del Rey, CA 90292-6023

FIA Card Services
PO Box 15019
Wilmington, DE 19886-5019

Florida Department of Revenue
Bankruptcy Unit
Post Office Box 6668
Tallahassee FL 32314-6668

GM Card
Customer Center
PO Box 80082
Salinas, CA 93912-0082

GM Card
HSBC Card Services
DEpt 9600
Carol Stream, IL 60128-9600

GMAC
PO Box 380901
Minneapolis, MN 55438-0901


Gemb/jcp
Attention: Bankruptcy
Po Box 103106
Roswell, GA 30076-9106

HSBC Best Buy
Attn Bankruptcy
PO Box 6985
Bridgewater, NJ 08807-0985

HSBC Retail Services
PO Box 5238
Carol Stream, IL 60197-5238


(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 21126
PHILADELPHIA PA 19114-0326

Jeffrey M Williamson, PhD
1209 Admiralty Blvd
Rockledge, FL 32955-5201

Landmark Bank, NA
c/o Patrick F. Healy, Esq
GrayRobinson PA
1795 West Nasa Blvd
Melbourne, FL 32901-2611


Lori Diane Bradstreet
3212 Bellwind Cir
Viera, FL 32955-5157

Singer & O'Neal, LC
Attn Elise A. Singer
112 W New Haven Ave
Melbourne, FL 32901-4303

Spiegel
Attn: Bankruptcy
Po Box 9204
Old Bethpage, NY 11804-9004


State Farm Insurance Co
Attn Don Campbell
PO Box 9618
Winter Haven, FL 33883-9618

Summer Lakes District Assn
1331 Bedford Dr Ste 103
Melbourne, FL 32940-1987

USAA Savings Bank
PO Box 14050
Las Vegas, NV 89114-4050


United States Trustee - ORL7
135 W Central Blvd., Suite 620
Orlando, FL 32801-2440

David R McParlin
Wolff, Hill, McFarlin & Herron, P.A
1851 West Colonial Drive
Orlando, FL 32804-7013

James Jeffrey Bradstreet
643 Hurst Road NE
Palm Bay, FL 32907-1439


Robert E Thomas
Post Office Box 5075
Winter Park, FL 32793-5075


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Discover
PO Box 15316
Wilmington, DE 19850

(d)Discover Card
PO Box 30943
Salt Lake City, UT 84130

Internal Revenue Service
Insolvency
PO Box 21126
Philadelphia, PA 19114


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
  (d)Florida Dept. of Revenue          End of Label Matrix
Bankruptcy Unit                      Mailable recipients   48
PO Box 6668                          Bypassed recipients    1
Tallahassee, FL 32314-6668           Total                 49
```

e-recording                                                1/13

Child Support
                SCOTT ELLIS
CLOSED
            2009 MAY 27 P 12: 20

IN RE: THE MARRIAGE OF
        FILED IN TVL
JAMES JEFFREY BRADSTREET,
        BREVARD CO. FL.

                Petitioner,

and

LORI DIANNE BRADSTREET,

                Respondent.
_____/

IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL CIRCUIT
BREVARD COUNTY, FLORIDA

Case No. 05-2007-DR-010905-XXXX-XX

**FINAL JUDGMENT OF
DISSOLUTION OF MARRIAGE**

THIS CAUSE came on to be heard before me for Final Hearing on the 18th day of May, 2009. Upon the evidence presented, it is thereupon

ORDERED AND ADJUDGED, as follows:

1. JURISDICTION: This Court has jurisdiction of the parties, of their minor children and of the subject matter of this proceeding.

2. MINOR CHILDREN: There have been two (2) children born issue of this marriage, namely: ELIZABETH BRADSTREET, born March 11, 1991, who is 18 years of age; and MATTHEW BRADSTREET, born February 28, 1994; who is 15 years of age. Florida is the home state of said minor children.

3. BIOGRAPHICAL INFORMATION:

MOTHER:                     Lori Diane Bradstreet
RESIDENTIAL ADDRESS: 3212 Bellwind Circle, Viera, FL 32955
DATE OF BIRTH:            8/18/58

FATHER:                      James Jeffrey Bradstreet
RESIDENTIAL ADDRESS: 643 Hurst Road, N.E., Palm Bay, FL 32907
DATE OF BIRTH:            7/6/54



EXHIBIT
A

Case # 05-2007-DR-010905-XXXX-XX
Document Page # 94



4. <u>SHARED PARENTAL RESPONSIBILITY:</u>   The parental responsibility for the minor children of the parties shall be shared by both parents to the extent that both parents shall retain full parental responsibility with respect to the minor children. Both parents are required to confer so that major decisions affecting the welfare of the children will be determined jointly. Such areas of responsibility for the children shall include their education, medical and dental care and which is more specifically set forth within the Memorandum of Agreement of the parties.

5. <u>PRIMARY PHYSICAL RESIDENCE:</u>   The primary physical residence of the minor children of the parties shall be with the Respondent/Mother, LORI DIANE BRADSTREET.

6. <u>CHILD SUPPORT:</u>   As and for child support commencing on June 1, 2009, the Father shall pay the sum of $898.75 bi-weekly in accordance with the Father's pay periods via Income Deduction Order through the State of Florida Disbursement Unit (FLSDU) as soon as a court order is in effect. Payments shall be paid directly to the Respondent/Mother until a court order is in effect. The above payment contains the additional sum of $600.00 per month pursuant to paragraph II C. 3. of the Memorandum of Agreement of the parties.

Payments shall be paid by money order, personal check, or certified check payable to "FLSDU" and mailed to State of Florida Disbursement Unit, P. O. Box 8500, Tallahassee, Florida 32314-8500. All child support payments through the Disbursement Unit shall include the payor's full name, county being paid and the civil action number of the case. The clerk's service charge is presently 4% of each payment or not less than $1.25 nor more than $5.25 and shall be paid with each child support payment. The Respondent's attorney shall be responsible for preparing an Income Deduction Order consistent with these provisions.

The parties have agreed to additional support which is more particularly described within their Memorandum of Agreement dated April 29, 2009, as follows:

A.    Special Needs Tuition: Each parent shall be responsible for one-half of the tuition cost for any agreed upon special needs education facility.

B.    Other Special Needs and Extracurricular Activities: The parties shall equally share the costs for any agreed upon extracurricular activities and special needs costs for Matthew.

7.  PARENTING TIME SHARING:  The parties have agreed and stipulated to a flexible time-sharing agreement. Said time sharing plan is more particularly described within the Memorandum of Agreement of the parties dated April 29, 2009.

8.  EQUITABLE DISTRIBUTION: The parties have agreed and stipulated to an equitable distribution of their assets and liabilities which is more particularly described within their Memorandum of Agreement dated April 29, 2009.

9.  RATIFICATION & APPROVAL OF MEMORANDUM OF AGREEMENT:  The Memorandum of Agreement of the parties dated April 29, 2009, is hereby ratified, approved and incorporated within the terms and conditions of this Final Judgment of Dissolution of Marriage and the parties to said Memorandum of Agreement are ordered to comply with the terms and conditions of said Agreement. A photostatic copy of the Memorandum of Agreement is attached hereto, marked Exhibit "A" and is incorporated herein be reference.

10. DISSOLUTION OF MARRIAGE:  This Court finds that the marriage of the parties is irretrievably broken and the bonds of marriage between the parties are hereby dissolved.

11. RETAINED JURISDICTION: This Court continues to retain jurisdiction of the parties, their minor children and the subject matter for enforcement and for all other legal purposes.

DONE AND ORDERED, in Chambers in Viera, Brevard County, Florida, this 18th day of May, 2009.

J. PRESTON SILVERNAIL
CIRCUIT COURT JUDGE

Copies furnished to:

Walter T. Rose, Jr., Esquire

Elise A. Singer, Esquire

IN THE EIGHTEENTH CIRCUIT COURT
FOR BREVARD COUNTY, FLORIDA

Case No. 05-2007-DR-010905–XXXX-XX

In the Marriage of:

JAMES JEFFREY BRADSTREET,
        Petitioner ,
and

LORI DIANE BRADSTREET,
        Respondent .
_____/

## MEMORANDUM OF AGREEMENT

    We,  James Bradstreet and Lori Bradstreet, have participated in one mediation session and reached the following agreements voluntarily by the process of mediation.  We each understand that the mediator was not representing either or both of us.  Attorneys were also present as follows:

        Elise Singer, Esquire for Wife/Mother

        Walter T. Rose, Jr., Esquire for Husband/Father

As a result of the mediation, the following agreement was reached:

I.    <u>CUSTODY AND PARENTING</u>:

    A. **Our Children:**    We agree that we are the parents of:

| Name: | Age: | Born: |
|---|---|---|
| Matthew Bradstreet | 15 | 2-28-94 |
| Elizabeth Bradstreet | 18 | 3-11-91 |

    B. **Parental Responsibility:**    We accept our responsibility as parents and, having considered the alternatives, agree to shared parental responsibility for the care of both children.  We understand that in sharing parental responsibility, we shall consult with each other and cooperate on major decisions affecting our children.  Such decisions may be related to the health, education, religious training and general well-being of our children.

    C. **Day to Day Management:** We agree that the Mother shall provide the primary place of residence for both children. Each parent shall be responsible for the day to day management of the children during their parenting time with the minor child.



EXHIBIT
B

Blumberg No. 5119

1

**D. Parenting Time with Elizabeth:**    Since she is 18 years old and shall be graduating in high school in May 2009, her parenting time with the Father shall be as arranged between Elizabeth and her Father.

**E. Parenting Time with Matthew:**    We feel a flexible time-sharing agreement with our children is best. At all unspecified times the children shall be with the Mother. We, therefore agree to the following Parenting time with the Father:

1. **Weekends:**    The Father shall have parenting time with Matthew up to two weekends each month picking up from school on Friday, and returning to the Mother at 9:00 a.m. on Sunday. The Father shall provide the Mother with 45 days notice of his intent to exercise such a weekend.

2. **Holidays and Special Occasions:**    We agree to share holidays/special occasions and vacations with our children by the following plan, which will take precedence over the regular schedule:

   a) **Thanksgiving:**    The Father shall have parenting time with the minor child in even-numbered years from school dismissal on Wednesday, returning to the Mother the Sunday prior to School resumption.

   b) **Winter Break:**    The Father shall have parenting time with the minor child in even numbered years from December 26th, returning to the Mother two days prior to school resumption, and in odd-numbered years from the day following school dismissal returning to the Mother on December 26th.

   c) **Father's Day:**    The Father shall have parenting time with the minor child on Father's Day, when the Father is available.

   d) **Matthew's Birthday:**    the Father shall have parenting time with Matthew on His Birthday in even-numbered years.

   e) **Vacations:**    We agree that each parent can take the child for vacation out of town/state/country, free of physical visitation by the other parent, for up to two (2) weeks as long as 45 days notice is provided. For any vacation arrangements other than above, the parents will agree in writing prior to the vacation. If the child will be out of town for more than one day, each parent will provide the other with a contact telephone number and/or address, if known. If unknown in advance, this information will be provided to the other parent promptly upon arrival at the destination. Reasonable phone contact shall be permitted during the vacation.

2

F.  **Other Contacts and Responsibilities:**

1.  <u>Phone Access:</u>    We agree our children shall have reasonable telephone access to each parent and that the conversation will be private, not monitored by the other parent.

2.  <u>Information Exchange:</u>    Each parent shall provide the other parent with a copy of all reports concerning the children, including report cards, progress reports, disciplinary reports, as well as notification of school programs, recitals, graduations, religious programs, sports and other extra-curricular activity schedules.  This information will be provided to the other parent promptly upon receipt of the information, and each parent shall have the right to participate in and attend special activities in which the children are engaged.

3.  <u>Health Records:</u>    A complete copy of all health care provider reports obtained by one parent will be promptly furnished to the other upon receipt of the information.  Each parent will authorize, in writing if necessary, school, health care providers, etc., to furnish the other parent complete information upon request.

4.  <u>Emergency Notification:</u>  Each parent shall notify the other of any serious illness or emergency that may arise while the children are with him/her, and the parent who is notified shall have immediate access to the child.

5.  <u>No Fighting at Exchanges:</u>    We agree that time between parents and children is primarily for the benefit of the children.  Thus, we shall not argue or discuss any problems during pick up and return times.

6.  <u>Foster Love and Respect:</u> We agree to foster love and respect between the children and the other parent and neither shall do anything which may knowingly disparage or put down the other parent or interfere with the other's natural and continuing relationship with their children.

7.  <u>Renegotiation:</u>    We realize that our children's needs will change with growth.  We realize further that, as adults, our own life-styles may change with time.  Therefore, we agree to renegotiate our time-sharing plans as needed to accommodate these changing needs.

8.  <u>Children Are Not Messengers:</u>    We agree that neither of us will use the children as messengers for either of us, but we will talk directly to each other about all matters concerning the children, which will include making visitation arrangements.

9.  <u>No Blaming:</u>    We agree that neither of us will discuss the divorce or any of its problems with the children in a way which casts fault on the other parent. We agree that

3

neither of us will attempt to influence the children to take sides with either parent with regard to any issues in the divorce, including custody.

10. <u>Children Are Not Spies</u>:   We agree that neither of us will question the children about the social life or other activities of the other parent or attempt to have the children become spies or informers on the activities of the other parent.

11. <u>Money and Parenting Time are Separate</u>: We agree that neither of us shall use threats or limit contact with the children with the other parent to punish a child's conduct, or as a means to force payment of money, or as a retributive reason if money ordered to be paid is not paid.  We understand that child support and visitation rights are not dependent upon each other.

12. <u>Courtesy in Scheduling</u>:   We agree that neither of us will schedule any event or time usage that will interfere with the time the other parent is entitled to without first consulting the other parent.

## II.  **CHILD SUPPORT:**

A. We acknowledge that each of us is responsible for the support of our children. The parties acknowledge that their son, Matthew, is a special needs child within the meaning of the Florida Statutes on Child Support.

B. **Guidelines**:    The parties agree that commencing May 1, 2009 the Father shall pay to the Mother guidelines (non-gross-up formula) child support.  The parties and their attorneys shall cooperate to determine the precise dollar amount.  This child support shall be paid bi-weekly in accordance with the Father's pay periods via Income Deduction Order through the State of Florida Disbursement Unit (FLSDU) as soon as a Court Order is in effect. The Clerk's service charge is presently 4% of each payment or not less than $1.25 nor more than $5.25, and shall be paid with the child support payment.  Payments under this Agreement shall be paid by money order, personal check, or certified check payable to "FLSDU", and mailed to:  State of Florida Disbursement Unit, P.O. Box 8500, Tallahassee, Florida 32314-8500.  All child support payments through the Disbursement Unit shall include the payor's full name, county being paid, and the civil action number of the case. Payments shall be paid directly to the Mother until a court order is in effect.  The Wife's Attorney shall be responsible for preparing an Income Deduction Order consistent with these provisions.

C. **Additional Support:**

1. **Special Needs Tuition:**   Each parent shall be responsible for one-half of the tuition cost for any agreed upon special needs education facility.

2. **Other Special Needs and Extracurricular Activities:** The parties shall equally share the costs for any agreed upon extracurricular activities and special needs costs for Matthew.

3. **Additional Funds:**   The Father agrees to pay to the Mother an additional $600.00 per month as and for the support of the minor child as his contribution toward uninsured and prescription health care costs, work-related child care costs, and the additional costs of Matthew having a Gluten-Free/Casein-Free (GFCF) diet.

D. **Arrearage:**   The parties agree that there is no arrearage owing as of April 30, 2009.

E. **Medical and Dental Expenses:**

1. <u>Medical and Dental Coverage</u>:   The Mother shall continue to maintain medical and dental insurance to cover the children if reasonably available from her employer.

2. <u>Creation's Own Coverage</u>:   The parties agree that Matthew shall continue to be seen primarily by Creation's Own (the Father's current medical practice), and the Father shall be responsible for paying for any uninsured/uncovered costs of care and supplements provided through Creation's Own.

3. <u>Additional Supplements</u>:   The Mother shall provide the Father with a List of Supplements for the minor child, that are not provided through Creation's Own.  The Father shall arrange for the provision of these supplements through his business, and shall be responsible for up to $100.00 per month in costs for these supplements.

4. <u>Uncovered Expenses</u>:   We agree to share health care, eye care and dental expenses not provided by the Wife, excluding psychological care, not covered by insurance including deductibles, shall be paid by us according to the following percentages:   Mother   50% Father: 50%.

F. **Life Insurance:**   The parties agree that the PEP and CUNA Life insurance policies shall have Elizabeth named as the 50% irrevocable beneficiary, and Matthew's Special Needs Trust named as the other 50% irrevocable beneficiary. Both of these insurance policies insure the Mother's life. The parties believe that the Father's life is uninsurable at this time.

G. **Tax Matters:**

1. <u>Exemptions</u>:   We agree that the Mother can claim both children as dependent(s) for federal income tax purposes in every year.

2. <u>Cooperation and Execution of Documents</u>:       We agree to promptly sign, upon the request of the other parent, any consents or other papers required by the Internal Revenue Service to provide the dependency exemptions and credits agreed upon between us in this agreement.

III.  **EQUITABLE DISTRIBUTION:**       The parties agree that their assets and debts shall be distributed in accordance with the attached "Exhibit A." Additional special notes concerning this distribution are contain below.

IV.  **REAL PROPERTY:**
   A. **Bellwind Residence:** The parties are the owners of a property located at 3212 Bellwind Circle, Viera, FL 32955.  This home is currently proceeding to foreclosure.  Both parties agree that neither of them shall be responsible for making the mortgage payment on the residence.  The parties agree that should a short-sale, or a deed-in-lieu be more advantageous to their debt position or to their credit rating, then they shall both cooperate to allow such a transaction to occur.
   B. **Hurst Residence:**       The parties are the owners of a residence located at 643 Hurst Road NE, Palm Bay, FL 32907.  The parties agree that the Husband shall be awarded this property free and clear of any ownership interest of the Wife, together with any and all debt attached thereto, and he shall indemnify and hold Wife harmless thereon.  The Husband shall use his best efforts to remove the Wife's name from the debt by attempting a refinance or assumption of the mortgage within 90 days of this agreement and once each year thereafter until successful.
   C. **Mortgage Interest:** the parties agree to equally share any tax benefit that may be claimed for mortgage interest on these properties through February 28, 2009.

V.  **PERSONAL PROPERTY:**    Each party is awarded the personal property currently in their possession.

VI.  **RETIREMENT ASSETS:**       The parties shall be awarded retirement assets in accordance with the attached Exhibit A.  Each party shall be responsible for arranging the preparation of any documents necessary to transfer a retirement asset into their own name.

VII. **LIFE INSURANCE:**    The parties agree that each shall be awarded the ownership of Life Insurance policies as set forth in the attached Exhibit A.  Pursuant thereto, the Husband shall



6

become the owner of the CUNA life insurance policy insuring the Wife's Life. He shall maintain the policy in good standing and shall make all necessary payments, not drawing them from the death benefit. If the Husband shall ever intend to not make further payments on the policy, he shall provide the Wife with 45 days notice, and she shall have the first opportunity to take over ownership of the policy and make the payments herself.

**VIII. LIABILITIES:**    The Wife shall be awarded her business Bank of America Credit Card. Husband is awarded all COI credit cards, the USAA credit card, GM Master Card, BMW credit card. Each party shall be solely responsible for their respective debts and shall indemnify and hold the other party harmless thereon.

**IX.   SPOUSAL SUPPORT:**    Both parties waive any and all claims either of them may have to any and all forms of alimony whatsoever.

**X.  BUSINESS INTERESTS:**

   **A.  Wife's Business:**    The parties agree that the Wife shall be awarded her dental practice, Lori D. Nelson, DDS PA, free and clear of any ownership interest of the Husband, together with any and all assets and debts of the practice, including the building the practice is located in, located at 730 Emerson Drive NE Palm Bay, FL 32907. Wife shall indemnify and hold Husband harmless on all debts of the business, including the mortgage on the practice building.

   **B.  Husband's Businesses:**    the parties agree that the Husband shall be awarded his businesses: Creation's Own Inc., Alliance Health Care Group, and Health Care Associates, free and clear of any ownership interest of the Wife, together with any and all assets and debts of the practice Husband shall indemnify and hold Wife harmless on all debts of the business.

**XI. CHILD'S 529 PLAN:**    The Husband shall be awarded the management and control of the 529 Plan with Elizabeth as the beneficiary.

7

The parties intend for this to be a complete agreement resolving all outstanding issues. Any prior orders not modified by this agreement remain in effect.

I have reviewed this Memorandum of Agreement and believe it represents the outcome of my mediation.

I fully understand that this agreement will be submitted to the Court by the mediator. At that time the judge may make this agreement part of an order of the Court.

_____
Husband

_____ 4/29/09 _____
Date

_____
Wife

_____ 4-29-09 _____
Date

I hereby certify that copies were hand-delivered to the parties and served by U.S. mail, MCS courier, or by hand on Walter T. Rose, Jr., Esquire, Attorney for Husband, and Elise Singer, Esquire, Attorney for Wife, this 29th day of April, 2009.

_____
Mediator

### ACTION BY COUNSEL

_____
Attorney for Wife

Approve/Object

_____ 4-29-09 _____
Date signed and mailed to Mediator

_____
Attorney for Husband

Approve/Object

_____ 4/29/09 _____
Date signed and mailed to Mediator

# Bradstreet and Bradstreet Equitable Distribution

| Assets / Debts | | Value | Distribution Jeffrey | Lori |
|---|---|---|---|---|
| **Real Estate** | | | | |
| Bellwind Residence | foreclosing | | | |
| Hearst Residence | | 250,000 | 250,000 | |
| 1st Mortgage | | -85,000 | -85,000 | |
| 2nd Mortgage | Jeff's name o | -79,000 | -79000 | |
| Dental Building | | 710,000 | | 710,000 |
| Mortgage | | -245,000 | | -245,000 |
| Timeshare - Grand Cayman | | | X | |
| Timeshare - Seaworld | | | | X |
| subtotal | | 551,000 | 86,000 | 465,000 |
| | | | | |
| **Vehicles** | | | | |
| Saturn ION | to Elizabeth | | | |
| Chevy Traverse | | | X | |
| 2005 Mercedes R350 | | | | X |
| Saturn Lease | | | X | |
| subtotal | | 0 | 0 | 0 |
| | | | | |
| **Retirement** | | | | |
| Fidelity Annuity (L) | | 13,778 | | 13,778 |
| Fidelity TOD (L) | | 23,581 | | 23,581 |
| Lori's use of TOD funds | | 3,400 | | 3,400 |
| Fidelity IRA (L) | | 52,276 | | 52,276 |
| John Hancock (L) | | 171,000 | 171,000 | |
| John Hancock (J) | | 16,800 | 16,800 | |
| FPIC (J) | | 5,000 | 5,000 | |
| subtotal | | 285,835 | 192,800 | 93,035 |
| | | | | |
| **Personal Property** | | | | |
| Furniture | | | | |
| Jewelry | | | | |
| subtotal | | 0 | 0 | 0 |
| | | | | |
| **Banking and Investments** | | | | |
| subtotal | | 0 | 0 | 0 |
| | | | | |
| **Debts** | | | | |
| subtotal | | 0 | 0 | 0 |
| | | | | |
| **Other** | | | | |
| Life Ins. - PEP (Lori) | | 194,221 | | 194,221 |
| Life Ins. - CUNA (Lori) | | 163,234 | 163,234 | |
| Loan to LDN | | 150,726 | | 150,726 |
| Loans to COI (AHCG, HCA, JEFF) | | 285,412 | 285,412 | |
| Jeff's use of 33K | | 33,000 | 33,000 | |
| 529 plan | | | X | |
| Lori D Nelson DDS PA | | | | X |
| Creation's Own Inc | | | X | |
| AHCG | | | X | |
| HCA | | | X | |
| ICDRC | non-profit | | | |
| Trademarks | | | X | |
| Signus Tax Write-off | split 50/50 | | | |
| subtotal | | 826,593 | 481,646 | 344,947 |
| | | | | |
| **TOTAL** | | 1,663,428 | 760,446 | 902,982 |

IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL CIRCUIT,
IN AND FOR BREVARD COUNTY,
FLORIDA

CASE NO:05-2007-DR-010905-XXXX-XX

IN RE: The Former Marriage of

**JAMES JEFFERY BRADSTREET,**

        Petitioner/Former Husband,

and

**LORI DIANNE BRADSTREET,**

        Respondent/Former Wife.

_____/

## AMENDED MOTION FOR CONTEMPT AND ENFORCEMENT

    COMES NOW the Respondent/Wife, **LORI DIANNE BRADSTREET**, by and through

her undersigned counsel and files this Amended Motion for Contempt and Enforcement and in

support thereof states as follow:

    1. The parties entered into a Memorandum of Agreement dated April 29, 2009, attached

hereto as Exhibit "A".

    2. Paragraph XI on page 7 of the parties Memorandum of Agreement states that the Father,

JAMES BRADSTREET, "shall be awarded the management and control of the 529 Plan with

Elizabeth (Bradstreet) as beneficiary."

    3. The purpose and intent of a 529 Plan is specifically for payment for college expenses. As

stated in the Memorandum of Agreement, this plan is for the benefit of Elizabeth and the payment

for Elizabeth's college education is to be made from the 529 Plan. Elizabeth has enrolled in college,

and has notified her Father of the tuition bill and requested this bill be paid from the 529 Plan, yet

the Petitioner/Former Husband, JAMES BRADSTREET, refuses to pay the tuition from this



account.

Furthermore, the Petitioner/Former Husband believes he is not required to pay for Elizabeth's freshman year of college, but rather can pick and choose when he pays for her education with these funds. As Elizabeth **has** enrolled in college, and **does** have an outstanding tuition bill, the funds from the 529 Plan should be immediately used for the purpose for which this plan was clearly designated, Elizabeth's college expenses.

4. Due to the Former Husband/Petitioner, JAMES BRADSTREET, unwillingness to use these funds for Elizabeth's education, the Respondent/Former Wife has concerns about the accounting of these funds. Additionally, the Petitioner/Former Husband has expressed to the Respondent/Former Wife his concerns that Elizabeth does not realize the value of education and costs associated with obtaining a college degree. In order to allay the Petitioner/Former Husband's concerns regarding Elizabeth's lack of knowledge regarding the value of education, the Petitioner/Former Husband should be required to provide Elizabeth an accounting of these funds subsequent to his making the tuition payment. This will allow for Elizabeth to see exactly what the dollar cost of a college education is, and alleviate the Petitioner/Former Husband's fears that Elizabeth does not realize the value and expense of a college education. Elizabeth would then be fully aware of that cost, and fully aware of the funds remaining in the 529 Plan to be used to complete her education.

In an effort to have her tuition paid, on August 5, 2009, Elizabeth Bradstreet contacted her Father, JAMES BRADSTREET, (Former Husband) directly, via certified, return receipt mail and enclosed a copy of her tuition billing statement from BCC and a copy of the 529 Plan. The Former Husband still refused to pay the tuition for Elizabeth.

On August 12, 2009, Elizabeth Bradstreet contacted her Father, JAMES BRADSTREET,

(Former Husband) directly, via certified, return receipt mail and enclosed a copy the receipt she paid for books in the amount of $124.07. To date, the Former Husband has not paid for the books out of the 529 account, nor reimbursed Elizabeth Bradstreet for the cost of these books.

Due to the Former Husband's refusal to pay for the Elizabeth Bradstreet's college tuition and books from the 529 account, the Former Wife paid the tuition out of her own funds so Elizabeth could attend college.

5.    Pursuant to the parties Memorandum of Agreement, page 5, items C1 and C2 (Exhibit "A"), the Former Husband is responsible for one-half of the minor child, MATTHEW BRADSTREET'S, school tuition for any agreed upon special needs educational facility and agreed upon special needs costs. The Former Wife has contacted the Former Husband via certified return receipt mail numerous times and enclosed copies of billing statements for tuition at the STAR Center and ABA therapists. The Former Husband refuses to reimburse the Former Wife for **any** of these costs, stating he did not agree upon the counselors. However, the Former Husband has previously consulted with the therapists, Stephanie Rasbach and Patrick Patterson, and used their services. The Former Husband is refusing to "agree" so as to avoid payment for necessary services.

6.    Pursuant to the parties Memorandum of Agreement dated April 29, 2009, Exhibit "A", paragraph IV (A), the parties agreed to a deed-in-lieu of foreclosure in the event that this transaction would be advantageous to their debt position.    A mediation was held in the parties foreclosure case (Case No: 05-2009-029805, Landmark Bank, N.A., v. James Jeffrey Bradstreet and Lori D. Bradstreet, Central Viera Community Association, Inc. and Summer Lakes District Association, Inc.) on October 12, 2009 wherein the parties were offered a deed-in-lieu of foreclosure for a fraction of the amount of a deficiency judgement and the Former Husband refused to agree to the offer.

WHEREFORE, the Respondent/Former Wife, LORI DIANNE BRADSTREET, prays that this Honorable Court will enter an Order for the following;

1)   Order the Former Husband, JAMES BRADSTREET, to **immediately** reimburse the Former Wife for tuition paid by her for Elizabeth Bradstreet's education  in the amount of $1,223.50, and the daughter, Elizabeth Bradstreet $124.07 for books;

2)   Order the Petitioner/Former Husband, JAMES BRADSTREET, to pay all future outstanding tuition bills for the child, ELIZABETH BRADSTREET, from the designated 529 Plan until those funds have been exhausted;

3)   Order the Petitioner/Former Husband, JAMES BRADSTREET, to provide the child, Elizabeth Bradstreet, with an accounting statement subsequent to paying each tuition bill, or, in the alternative, Order the Former Husband execute documents changing the beneficiary/participant of the 529 Plan to the Former Wife's name as the Former Husband refuses to use these funds for the college education of Elizabeth Bradstreet;

4)   Order the Former Husband to **immediately** fully reimburse the Former Wife for tuition and ABA therapy services for Matthew Bradstreet.

5) Order the Former Husband to accept the terms of the deed-in-lieu of foreclosure so as to make more advantageous the parties debt position pursuant to the Mediation Agreement;

7)   Order the Father to pay for Attorney fees and costs associated with this Motion;

8)   Such other and further relief as this Court deems just and proper.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via courier delivery to Clarissa Harrell, Esq., 8195 N. Wickham Rd., Suite 200, Melbourne, FL 32940 this 15ᵗʰ day of October, 2009.

ELISE A. SINGER, ESQ.
Florida Bar No. 0749117
112 W. New Haven Avenue
Melbourne, FL 32901
321-722-3060
321-725-2713 (fax)
Attorney for Former Wife

IN THE EIGHTEENTH CIRCUIT COURT
FOR BREVARD COUNTY, FLORIDA

Case No. 05-2007-DR-010905–XXXX-XX

In the Marriage of:

JAMES JEFFREY BRADSTREET,
                    Petitioner,
and

LORI DIANE BRADSTREET,
                    Respondent.
_____/

## MEMORANDUM OF AGREEMENT

We, James Bradstreet and Lori Bradstreet, have participated in one mediation session and reached the following agreements voluntarily by the process of mediation. We each understand that the mediator was not representing either or both of us. Attorneys were also present as follows:

> Elise Singer, Esquire for Wife/Mother

> Walter T. Rose, Jr., Esquire for Husband/Father

As a result of the mediation, the following agreement was reached:

I. CUSTODY AND PARENTING:

    A. Our Children:    We agree that we are the parents of:

| Name: | Age: | Born: |
|---|---|---|
| Matthew Bradstreet | 15 | 2-28-94 |
| Elizabeth Bradstreet | 18 | 3-11-91 |

    B. Parental Responsibility:    We accept our responsibility as parents and, having considered the alternatives, agree to shared parental responsibility for the care of both children. We understand that in sharing parental responsibility, we shall consult with each other and cooperate on major decisions affecting our children. Such decisions may be related to the health, education, religious training and general well-being of our children.

    C. Day to Day Management: We agree that the Mother shall provide the primary place of residence for both children. Each parent shall be responsible for the day to day management of the children during their parenting time with the minor child.

EXHIBIT A 

1

**D.  Parenting Time with Elizabeth:**    Since she is 18 years old and shall be graduating in high school in May 2009, her parenting time with the Father shall be as arranged between Elizabeth and her Father.

**E.  Parenting Time with Matthew:**    We feel a flexible time-sharing agreement with our children is best.  At all unspecified times the children shall be with the Mother.  We, therefore agree to the following Parenting time with the Father:

1.  **Weekends:**    The Father shall have parenting time with Matthew up to two weekends each month picking up from school on Friday, and returning to the Mother at 9:00 a.m. on Sunday.  The Father shall provide the Mother with 45 days notice of his intent to exercise such a weekend.

2.  **Holidays and Special Occasions:**    We agree to share holidays/special occasions and vacations with our children by the following plan, which will take precedence over the regular schedule:

    a)  **Thanksgiving:**    The Father shall have parenting time with the minor child in even-numbered years from school dismissal on Wednesday, returning to the Mother the Sunday prior to School resumption.

    b)  **Winter Break:**    The Father shall have parenting time with the minor child in even numbered years from December 26th, returning to the Mother two days prior to school resumption, and in odd-numbered years from the day following school dismissal returning to the Mother on December 26th.

    c)  **Father's Day:**    The Father shall have parenting time with the minor child on Father's Day, when the Father is available.

    d)  **Matthew's Birthday:**    the Father shall have parenting time with Matthew on His Birthday in even-numbered years.

    e)  **Vacations:**    We agree that each parent can take the child for vacation out of town/state/country, free of physical visitation by the other parent, for up to two (2) weeks as long as 45 days notice is provided.  For any vacation arrangements other than above, the parents will agree in writing prior to the vacation.  If the child will be out of town for more than one day, each parent will provide the other with a contact telephone number and/or address, if known.  If unknown in advance, this information will be provided to the other parent promptly upon arrival at the destination.  Reasonable phone contact shall be permitted during the vacation.

2

F.  Other Contacts and Responsibilities:

1.  <u>Phone Access:</u>      We agree our children shall have reasonable telephone access to each parent and that the conversation will be private, not monitored by the other parent.

2.  <u>Information Exchange:</u>     Each parent shall provide the other parent with a copy of all reports concerning the children, including report cards, progress reports, disciplinary reports, as well as notification of school programs, recitals, graduations, religious programs, sports and other extra-curricular activity schedules.  This information will be provided to the other parent promptly upon receipt of the information, and each parent shall have the right to participate in and attend special activities in which the children are engaged.

3.  <u>Health Records:</u>    A complete copy of all health care provider reports obtained by one parent will be promptly furnished to the other upon receipt of the information.  Each parent will authorize, in writing if necessary, school, health care providers, etc., to furnish the other parent complete information upon request.

4.  <u>Emergency Notification:</u>  Each parent shall notify the other of any serious illness or emergency that may arise while the children are with him/her, and the parent who is notified shall have immediate access to the child.

5.  <u>No Fighting at Exchanges:</u>      We agree that time between parents and children is primarily for the benefit of the children.  Thus, we shall not argue or discuss any problems during pick up and return times.

6.  <u>Foster Love and Respect:</u> We agree to foster love and respect between the children and the other parent and neither shall do anything which may knowingly disparage or put down the other parent or interfere with the other's natural and continuing relationship with their children.

7.  <u>Renegotiation:</u>    We realize that our children's needs will change with growth.  We realize further that, as adults, our own life-styles may change with time.  Therefore, we agree to renegotiate our time-sharing plans as needed to accommodate these changing needs.

8.  <u>Children Are Not Messengers:</u>    We agree that neither of us will use the children as messengers for either of us, but we will talk directly to each other about all matters concerning the children, which will include making visitation arrangements.

9.  <u>No Blaming:</u>      We agree that neither of us will discuss the divorce or any of its problems with the children in a way which casts fault on the other parent. We agree that

3

neither of us will attempt to influence the children to take sides with either parent with regard to any issues in the divorce, including custody.

10. <u>Children Are Not Spies</u>:   We agree that neither of us will question the children about the social life or other activities of the other parent or attempt to have the children become spies or informers on the activities of the other parent.

11. <u>Money and Parenting Time are Separate</u>: We agree that neither of us shall use threats or limit contact with the children with the other parent to punish a child's conduct, or as a means to force payment of money, or as a retributive reason if money ordered to be paid is not paid.  We understand that child support and visitation rights are not dependent upon each other.

12. <u>Courtesy in Scheduling</u>:   We agree that neither of us will schedule any event or time usage that will interfere with the time the other parent is entitled to without first consulting the other parent.

## II.   CHILD SUPPORT:

A. We acknowledge that each of us is responsible for the support of our children. The parties acknowledge that their son, Matthew, is a special needs child within the meaning of the Florida Statutes on Child Support.

B. **Guidelines**:    The parties agree that commencing May 1, 2009 the Father shall pay to the Mother guidelines (non-gross-up formula) child support.  The parties and their attorneys shall cooperate to determine the precise dollar amount.  This child support shall be paid bi-weekly in accordance with the Father's pay periods via Income Deduction Order through the State of Florida Disbursement Unit (FLSDU) as soon as a Court Order is in effect. The Clerk's service charge is presently 4% of each payment or not less than $1.25 nor more than $5.25, and shall be paid with the child support payment.  Payments under this Agreement shall be paid by money order, personal check, or certified check payable to "FLSDU", and mailed to:  State of Florida Disbursement Unit, P.O. Box 8500, Tallahassee, Florida 32314-8500.  All child support payments through the Disbursement Unit shall include the payor's full name, county being paid, and the civil action number of the case. Payments shall be paid directly to the Mother until a court order is in effect.  The Wife's Attorney shall be responsible for preparing an Income Deduction Order consistent with these provisions.

C. Additional Support:

1. **Special Needs Tuition:**   Each parent shall be responsible for one-half of the tuition cost for any agreed upon special needs education facility.

2. **Other Special Needs and Extracurricular Activities:** The parties shall equally share the costs for any agreed upon extracurricular activities and special needs costs for Matthew.

3. **Additional Funds:**   The Father agrees to pay to the Mother an additional $600.00 per month as and for the support of the minor child as his contribution toward uninsured and prescription health care costs, work-related child care costs, and the additional costs of Matthew having a Gluten-Free/Casein-Free (GFCF) diet.

D. **Arrearage:**   The parties agree that there is no arrearage owing as of April 30, 2009.

E. **Medical and Dental Expenses:**

1. <u>Medical and Dental Coverage</u>:   The Mother shall continue to maintain medical and dental insurance to cover the children if reasonably available from her employer.

2. <u>Creation's Own Coverage</u>:   The parties agree that Matthew shall continue to be seen primarily by Creation's Own (the Father's current medical practice), and the Father shall be responsible for paying for any uninsured/uncovered costs of care and supplements provided through Creation's Own.

3. <u>Additional Supplements</u>:  The Mother shall provide the Father with a List of Supplements for the minor child, that are not provided through Creation's Own.  The Father shall arrange for the provision of these supplements through his business, and shall be responsible for up to $100.00 per month in costs for these supplements.

4. <u>Uncovered Expenses</u>:   We agree to share health care, eye care and dental expenses not provided by the Wife, excluding psychological care, not covered by insurance including deductibles, shall be paid by us according to the following percentages:  Mother   50% Father: 50%.

F. **Life Insurance:**   The parties agree that the PEP and CUNA Life insurance policies shall have Elizabeth named as the 50% irrevocable beneficiary, and Matthew's Special Needs Trust named as the other 50% irrevocable beneficiary. Both of these insurance policies insure the Mother's life. The parties believe that the Father's life is uninsurable at this time.

G. **Tax Matters:**

1. <u>Exemptions</u>:   We agree that the Mother can claim both children as dependent(s) for federal income tax purposes in every year.

2. Cooperation and Execution of Documents:     We agree to promptly sign, upon the request of the other parent, any consents or other papers required by the Internal Revenue Service to provide the dependency exemptions and credits agreed upon between us in this agreement.

III.  **EQUITABLE DISTRIBUTION:**     The parties agree that their assets and debts shall be distributed in accordance with the attached "Exhibit A." Additional special notes concerning this distribution are contain below.

IV.  **REAL PROPERTY:**
   A. Bellwind Residence: The parties are the owners of a property located at 3212 Bellwind Circle, Viera, FL 32955. This home is currently proceeding to foreclosure. Both parties agree that neither of them shall be responsible for making the mortgage payment on the residence. The parties agree that should a short-sale, or a deed-in-lieu be more advantageous to their debt position or to their credit rating, then they shall both cooperate to allow such a transaction to occur.

   B. Hurst Residence:     The parties are the owners of a residence located at 643 Hurst Road NE, Palm Bay, FL 32907. The parties agree that the Husband shall be awarded this property free and clear of any ownership interest of the Wife, together with any and all debt attached thereto, and he shall indemnify and hold Wife harmless thereon. The Husband shall use his best efforts to remove the Wife's name from the debt by attempting a refinance or assumption of the mortgage within 90 days of this agreement and once each year thereafter until successful.

   C. Mortgage Interest: the parties agree to equally share any tax benefit that may be claimed for mortgage interest on these properties through February 28, 2009.

V.  **PERSONAL PROPERTY:**     Each party is awarded the personal property currently in their possession.

VI.  **RETIREMENT ASSETS:**     The parties shall be awarded retirement assets in accordance with the attached Exhibit A. Each party shall be responsible for arranging the preparation of any documents necessary to transfer a retirement asset into their own name.

VII.  **LIFE INSURANCE:**     The parties agree that each shall be awarded the ownership of Life Insurance policies as set forth in the attached Exhibit A. Pursuant thereto, the Husband shall

become the owner of the CUNA life insurance policy insuring the Wife's Life. He shall maintain the policy in good standing and shall make all necessary payments, not drawing them from the death benefit. If the Husband shall ever intend to not make further payments on the policy, he shall provide the Wife with 45 days notice, and she shall have the first opportunity to take over ownership of the policy and make the payments herself.

VIII. LIABILITIES:    The Wife shall be awarded her business Bank of America Credit Card. Husband is awarded all COI credit cards, the USAA credit card, GM Master Card, BMW credit card. Each party shall be solely responsible for their respective debts and shall indemnify and hold the other party harmless thereon.

IX.  SPOUSAL SUPPORT:    Both parties waive any and all claims either of them may have to any and all forms of alimony whatsoever.

X.  BUSINESS INTERESTS:

A.  Wife's Business:    The parties agree that the Wife shall be awarded her dental practice, Lori D. Nelson, DDS PA, free and clear of any ownership interest of the Husband, together with any and all assets and debts of the practice, including the building the practice is located in, located at 730 Emerson Drive NE Palm Bay, FL 32907. Wife shall indemnify and hold Husband harmless on all debts of the business, including the mortgage on the practice building.

B.  Husband's Businesses:    the parties agree that the Husband shall be awarded his businesses: Creation's Own Inc., Alliance Health Care Group, and Health Care Associates, free and clear of any ownership interest of the Wife, together with any and all assets and debts of the practice Husband shall indemnify and hold Wife harmless on all debts of the business.

XI. CHILD'S 529 PLAN:    The Husband shall be awarded the management and control of the 529 Plan with Elizabeth as the beneficiary.

7

The parties intend for this to be a complete agreement resolving all outstanding issues. Any prior orders not modified by this agreement remain in effect.

I have reviewed this Memorandum of Agreement and believe it represents the outcome of my mediation.

I fully understand that this agreement will be submitted to the Court by the mediator. At that time the judge may make this agreement part of an order of the Court.

_____
Husband

_____
4/29/09
Date

_____
Wife

_____
4-29-09
Date

I hereby certify that copies were hand-delivered to the parties and served by U.S. mail, MCS courier, or by hand on Walter T. Rose, Jr., Esquire, Attorney for Husband, and Elise Singer, Esquire, Attorney for Wife, this 29th day of April, 2009.

_____
Mediator

## ACTION BY COUNSEL

_____
Attorney for Wife          Approve/Object

4-29-09
Date signed and mailed to Mediator

_____
Attorney for Husband       Approve/Object

4/29/09
Date signed and mailed to Mediator

EXHIBIT A

# Bradstreet and Bradstreet Equitable Distribution

| Assets / Debts | | Value | Distribution Jeffrey | Lori |
|---|---|---|---|---|
| **Real Estate** | | | | |
| Bellwind Residence | foreclosing | | | |
| Hearst Residence | | 250,000 | 250,000 | |
| 1st Mortgage | | -85,000 | -85,000 | |
| 2nd Mortgage | Jeff's name o | -79,000 | -79000 | |
| Dental Building | | 710,000 | | 710,000 |
| Mortgage | | -245,000 | | -245,000 |
| Timeshare - Grand Cayman | | | X | |
| Timeshare - Seaworld | | | | X |
| subtotal | | 551,000 | 86,000 | 465,000 |
| | | | | |
| **Vehicles** | | | | |
| Saturn ION | to Elizabeth | | | |
| Chevy Traverse | | | X | |
| 2005 Mercedes R350 | | | | X |
| Saturn Lease | | | X | |
| subtotal | | 0 | 0 | 0 |
| | | | | |
| **Retirement** | | | | |
| Fidelity Annuity (L) | | 13,778 | | 13,778 |
| Fidelity TOD (L) | | 23,581 | | 23,581 |
| Lori's use of TOD funds | | 3,400 | | 3,400 |
| Fidelity IRA (L) | | 52,276 | | 52,276 |
| John Hancock (L) | | 171,000 | 171,000 | |
| John Hancock (J) | | 16,800 | 16,800 | |
| FPIC (J) | | 5,000 | 5,000 | |
| subtotal | | 285,835 | 192,800 | 93,035 |
| | | | | |
| **Personal Property** | | | | |
| Furniture | | | | |
| Jewelry | | | | |
| subtotal | | 0 | 0 | 0 |
| | | | | |
| **Banking and Investments** | | | | |
| subtotal | | 0 | 0 | 0 |
| | | | | |
| **Debts** | | | | |
| subtotal | | 0 | 0 | 0 |
| | | | | |
| **Other** | | | | |
| Life Ins. - PEP (Lori) | | 194,221 | | 194,221 |
| Life Ins. - CUNA (Lori) | | 163,234 | 163,234 | |
| Loan to LDN | | 150,726 | | 150,726 |
| Loans to COI (AHCG, HCA, JEFF) | | 285,412 | 285,412 | |
| Jeff's use of 33K | | 33,000 | 33,000 | |
| 529 plan | | | X | |
| Lori D Nelson DDS PA | | | | X |
| Creation's Own Inc | | | X | |
| AHCG | | | X | |
| HCA | | | X | |
| ICDRC | non-profit | | X | |
| Trademarks | | | X | |
| Signus Tax Write-off | split 50/50 | | | |
| subtotal | | 826,593 | 481,646 | 344,947 |
| | | | | |
| TOTAL | | 1,663,428 | 760,446 | 902,982 |

IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL CIRCUIT,
IN AND FOR BREVARD COUNTY,
FLORIDA
CASE NO:05-2007-DR-010905-XXXX-XX

IN RE: The Marriage of

**JAMES JEFFERY BRADSTREET,**

      Petitioner/Husband,

and

**LORI DIANNE BRADSTREET,**

      Respondent/Wife.

_____/

### ORDER ON FORMER WIFE'S MOTION FOR CONTEMPT AND ENFORCEMENT

**THIS CAUSE,** having come before the Court on November 9, 2009 and November 13, 2009 upon the Former Wife's Motion for Contempt and Enforcement, the Court having heard testimony of the parties, testimony of witnesses and argument of counsel and being otherwise fully advised in the premises, **ORDERS AS FOLLOWS**:

1.    The Former Wife's Motion for Contempt and Enforcement as regards Paragraph IV(A) of the parties Memorandum of Agreement, which was incorporated into the Final Judgment, is hereby **GRANTED**.

2.    The Former Husband shall cooperate in signing all documents, including but not limited to, a Deed In Lieu of Foreclosure so as to facilitate the settlement as offered by Landmark Bank N.A. (regarding liability on the promissory notes at issue in that case in exchange for the Former Husband and the Former Wife executing and delivering to Landmark Bank, N.A., a Deed In Lieu of Foreclosure for receiving payment of two hundred thousand dollars ($200,000.00).

3.    The Former Husband shall sign all documents by November 16, 2009 at 5:00 p.m.



EXHIBIT
D

or as soon thereafter as the documents become available for signature.

4.      The Court reserves jurisdiction on the issue of Attorney Fees.

5.      The Court reserves jurisdiction for the enforcement of this Order and for all other

matters in this cause.

**DONE** and **ORDERED** this _____ day of _____, 2009, Viera, Brevard County, Florida.


_____
**LISA DAVIDSON**
Circuit Court Judge

Conformed Copies: Elise A. Singer, Esq.
                  Clarissa E. Harrell, Esq.

IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR BREVARD COUNTY,
FLORIDA

IN RE:  The Former Marriage of:

JAMES JEFFREY BRADSTREET,

FAMILY LAW DIVISION
CASE NO.: 05-2007-DR-01095

    Petitioner/Former Husband,

and

LORI DIANNE BRADSTREET,

    Respondent/Former Wife.

_____/

## FORMER HUSBAND'S MOTION FOR CONTEMPT AND ENFORCEMENT AND MOTION FOR ATTORNEY'S FEES AND COSTS

Petitioner/Former Husband JAMES JEFFREY BRADSTREET ("Former Husband"), by and through his undersigned attorney CLARISSA E. HARRELL, ESQUIRE, hereby files this Motion for Contempt and Enforcement and Motion for Attorney's Fees and Costs against Respondent/Former Wife LORI DIANNE BRADSTREET ("Former Wife"), and as grounds asserts:

1.    JURISDICTION; RELEVANT CASE HISTORY.  A Final Judgment of Dissolution of Marriage ("Final Judgment") was entered in the above-captioned case on May 27, 2009.  The Court has continuing jurisdiction over the parties and the subject matter of this cause as it relates to enforcement pursuant to paragraph 11 on page 4 of the Final Judgment, in which the Court specifically retained jurisdiction for enforcement and for all other legal purposes. Paragraph 9 on page 3 of the Final Judgment provides, "[T]he Memorandum of Agreement of the parties dated April 29, 2009, is hereby ratified, approved, and



EXHIBIT
E

In Re: The Former Marriage of James Jeffrey Bradstreet and Lori Dianne Bradstreet
Case Number: 05-2007-DR-010905
Motion for Contempt and Enforcement and Motion for Attorney's Fees and Costs

incorporated within the terms and conditions of this Final Judgment and the parties to said Memorandum of Agreement are ordered to comply with the terms and conditions of said Agreement."

2.    <u>FORMER WIFE'S FAILURE TO EXECUTE AND PROVIDE QUIT CLAIM DEED</u>.    Section IV entitled "Real Property" on page 6 of the Memorandum of Agreement incorporated into the Final Judgment, specifically subsection B entitled "Hurst Residence" states in relevant part that the "Husband shall be awarded this [Hurst Road] property free and clear of any ownership interest of the Wife . . .." This provision is reinforced by the specific award in the attached Exhibit A entitled "Bradstreet and Bradstreet Equitable Distribution" reflecting placement of this property in the Former Husband's equitable distribution column.

Although the Memorandum of Agreement was executed by both parties on April 29, 2009; the Final Judgment was entered in May 2009; and **eight (8) months has thus elapsed** since the Former Wife's obligation to transfer her ownership interest in this property was effectuated by Agreement; **the Former Wife has to date still willfully failed and refused to execute and deliver a quit claim deed** in order to effectuate the transfer of her ownership interest in this property over to the Former Husband as required.

3.    <u>FORMER WIFE'S FAILURE TO EXECUTE AND RETURN REQUIRED QUALIFIED DOMESTIC RELATIONS ORDER RELATED TO JOHN HANCOCK RETIREMENT ACCOUNT</u>.    Section VI entitled "Retirement Assets"

In Re: The Former Marriage of James Jeffrey Bradstreet and Lori Dianne Bradstreet
Case Number: 05-2007-DR-010905
Motion for Contempt and Enforcement and Motion for Attorney's Fees and Costs

on page 6 of the Memorandum of Agreement incorporated into the Final Judgment provides that the parties shall be awarded retirement assets in accordance with attached Exhibit A. Exhibit A clearly indicates that the John Hancock retirement asset held in the Former Wife's name with a value of $171,000 is awarded to the Former Husband.

Financial expert Dale Russell with the Gallo & Russell firm prepared the necessary and appropriate Qualified Domestic Relations Order (QDRO) required to properly effectuate transfer of this asset to the Former Husband. The Former Wife is required to sign this proposed QDRO in order for it to be submitted to the Court for entry and implemented. Although the governing Memorandum of Agreement was executed by both parties in April 2009; the Final Judgment was entered in May 2009; and **eight (8) months has thus elapsed** since the Former Wife's obligation to transfer her full ownership interest in the John Hancock retirement account was mandated by Agreement; **the Former Wife has to date still willfully failed and refused to execute and deliver the prepared Qualified Domestic Relations Order** in order to effectuate the transfer of her ownership interest in this retirement asset over to the Former Husband as required.

4.   <u>FORMER WIFE'S FAILURE TO COOPERATE WITH TRANSFER OF</u> <u>INSURANCE POLICY</u>.  Section VII entitled "Life Insurance" on page 6 of the Memorandum of Agreement incorporated into the Final Judgment provides that each party shall be awarded the ownership of life insurance policies as set forth

In Re: The Former Marriage of James Jeffrey Bradstreet and Lori Dianne Bradstreet
Case Number: 05-2007-DR-010905
Motion for Contempt and Enforcement and Motion for Attorney's Fees and Costs

in the attached Exhibit A, and that the Husband shall become owner of the CUNA life insurance policy insuring the Wife's life.  The referenced Exhibit A reflects distribution of this policy with a specified value of $183,234 to the Former Husband.

Although the Memorandum of Agreement was executed by both parties on April 29, 2009; the Final Judgment was entered in May 2009; the Former Wife has been advised that transfer of this policy over to the Husband requires only that she obtain a standard form from CUNA, and complete and return it; and although **eight (8) months has now elapsed** since the Former Wife's obligation to transfer the policy was contracted for; **the Former Wife has to date still willfully failed and refused to obtain, execute, and return this form in order to effectuate the transfer of this policy** as required.

5.    REQUEST FOR AWARD OF ATTORNEY'S FEES AND COSTS.  As a result of the Former Wife's willful failure to comply with the terms of the Final Judgment entered in this cause, she should be required to pay the reasonable attorney's fees and costs incurred by the Former Husband in his efforts to secure compliance, including the cost of preparing the instant motion, setting and bringing it to hearing, and all other related costs.

WHEREFORE, Petitioner/Former Husband JAMES JEFFREY BRADSTREET respectfully requests that the Respondent/Former Wife be found to be in civil contempt for her failure to comply with the terms of the Final

4

In Re: The Former Marriage of James Jeffrey Bradstreet and Lori Dianne Bradstreet
Case Number: 05-2007-DR-010905
Motion for Contempt and Enforcement and Motion for Attorney's Fees and Costs

Judgment referenced hereinabove; that she be ordered to immediately fulfill her obligations as required by the Final Judgment; that she be ordered to refrain from taking the parties' minor son for any further evaluation or therapeutic sessions with Dr. Williamson or any other expert who has not been specifically approved by the Former Husband; that the Former Wife be ordered to pay all of the Former Husband's reasonable attorney's fees and costs related to and necessitated by the bringing of this Motion; and granting all such other and further relief as this Court may deem to be just and appropriate under the circumstances of this case.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing is being delivered via facsimile transmission and courier to ELISE A. SINGER, Esquire, Counsel for Respondent/Former Wife, 112 New Haven Avenue, Melbourne, Florida 32901, on December _18th_, 2009.

CLARISSA E. HARRELL, ESQUIRE
Florida Bar Number: 0992526
Counsel for Petitioner/Former Husband
The Law Office of Clarissa E. Harrell, P.A.
8195 N. Wickham Road, Suite 200
Melbourne, Florida 32940
(321) 254-6880
Fax: (321) 254-6882